**Harry KOPLIN, Appellant-Cross Appellee,**

**v.**

**George KELRICK et al., Appellees-Cross Appellants.**

Court of Appeals of Kentucky.

June 6, 1969.

Hunter M. Shumate, Shumate, Shumate & Flaherty, Irvine, for appellant.

D. L. Pendleton, Jr., Stanton, Lewis A. White, Mt. Sterling, for appellees.

MILLIKEN, Judge.

This is a sequel to Koplin v. Kelrick, Ky., 360 S.W.2d 203 (1962), wherein we reversed a judgment for an accounting to the assignees of undivided interests in Lee

County oil leases because of the introduction of hearsay evidence, but affirmed a judgment denying a counterclaim for $10,000 and directed a new trial. Since then, George Kelrick, the principal plaintiff-appellee, died and D. L. Pendleton, Jr., Administrator of his estate, was substituted in his place as an appellee-plaintiff and cross-appellent. However, we have retained the names of this litigation used in the trial court for purposes of this opinion. Upon the second trial the plaintiffs were adjudged a recovery of $11,207 with interest from April 30, 1956, the trial court declining to grant recovery for claims accruing thereafter, from which both sides appeal.

In order to raise capital for development of the oil leases defendant Koplin assigned a 15% interest to plaintiffs Kelrick and associates and agreed to continue development of the property. The terms of the written assignment stipulated that the Kelricks were to be paid 24% of the net income and net income was defined as "gross income less all costs and expenses incurred in the future development, oil production and operation of the project." The requested accounting involves the period from January 1954 through November 1956. The parties sold their interests to Climax Molybdenum Company early in December 1956. Until the death of Koplin's accountant, Edward Gimbel, in January 1955, the Kelricks received regular payments, but after Gimbel's death they received nothing until September 1955 when Koplin paid them $10,000 which he claimed was a loan but which this court decided was a payment on account as heretofore mentioned.

Until the sale to Climax in December 1956 all of the oil from the project was sold to Ashland Oil and Transportation Company, and after August 1, 1955, Ashland, by agreement of all the parties, paid the Kelricks directly 15% (minus .6% for lifting costs) of the oil sales proceeds instead of the 24% of net income due them under their assignment, paying the balance of 9% to Koplin. This is a sketch of the background.

■ Upon the return of the case for retrial the Kelricks tendered an amendment or supplement to their complaint which extended the litigation to cover a complete accounting between the parties *up* to the sale to Climax in December 1956, the original complaint having been confined to the period ending in January 1956, and the trial court permitted filing of the amendment or extension of the complaint. The amended complaint was not a new cause of action, but rather a supplement to the original complaint; it covered the complete relationship between the parties, pertained to the same assignment or transaction, and was clearly permissible under CR 15.04. The Kelricks' testimony in the first trial was taken April 26, 1958, two years after the filing of the original complaint and nearly a year and a half after the parties had sold the leases to Climax, and consequently covered the full period of time subsequent to the filing of the original complaint, but no effort was made at that time to amend the complaint to conform to the proof which the Keldricks were entitled to do under CR 15.02.

In our previous opinion, Koplin v. Kelrick, Ky., 360 S.W.2d 203 at page 208, we said:

"Upon the retrial of this case the problem of the Kelricks in proving the amount of their claim will be simplified by Koplin's judicial admission, made during his previous testimony, that as a part of the negotiations culminating in the sale of the Cable Project to Climax Molybdenum Company he agreed to release the Kelricks of any pending expense charges. (That Koplin released the Kelricks was conceded on both sides. Whether as a part of the same transaction the Kelricks also released Koplin, as he claims, was necessarily decided in the negative by the chancellor's finding up-

holding the claim of the Kelricks.) This eliminates the necessity of proving any item but the gross proceeds (from the cessation of payments by Gimbel until recommencement by Ashland) multiplied by their pro rata shares, against which the $10,000 received from Koplin is to be credited."

The quoted portion of our prior opinion supplies the formula (the law of the case) for determining the amounts due the Kelricks. For the period beginning in January 1954 through October 1954, (when the last payment was received through Gimbel), the Kelricks have tabulated the *net* value of the oil produced and the value of their 24% thereof which amounted to $5686.65 and on which they had been paid $4026.10 through Gimbel, leaving a balance due of $1660.55, and on which they claim interest at 6% from November 1, 1954.

For the period from November 1954 through July 1955 (the period from the last payment through Gimbel to Ashland's direct payments to the Kelricks in lieu of their trying to get them from Koplin), the Kelricks established the amount due them through Ashland's monthly records of the amount and cost of oil purchased from Koplin, calculated their share at 24% as directed by our prior opinion and, after crediting this period with the $10,000 paid them by Koplin, established a balance due them for the period amounting to $5784.35 on which they claim interest at 6% from September 1, 1955, when Koplin paid them the $10,000.

For the third period, from August 1, 1955, after which Ashland paid Kelricks directly to December 1, 1956, when the leases were sold to Climax, the Kelricks again established by Ashland's records the value of the oil produced and purchased by Ashland and the amount due them, calculated at 24%, which they credited with the amount (15%) actually received from Ashland leaving a balance of $12,485.05. The Keldricks pray interest at 6%, calculated on each 9% monthly underpayment (24% due

less 15% paid) until paid. Because of the nature of the parties' agreement for Ashland to pay the Kelricks directly each month and obviously withholding the 9% by agreement, we conclude that it would be more in keeping with the evolution of the arrangement between the parties for the six percent interest on the $12,485.05 to begin January 1, 1957, after the sale to Climax for, after all, when the arrangement with Ashland was made none of the parties foresaw the sale to Climax and Koplin's release of any expense claims he had in order to effect the sale to Climax.

■ In summary we conclude that the Kelricks are entitled to judgment for $1660.55 with interest at 6% from November 1, 1954, for the first period; judgment for $5784.35 with interest at 6% from September 1, 1955, for the second period; and judgment for $12,485.05 with interest at 6% from January 1, 1957, for the third or Ashland period.

■ We now briefly dispose of the defenses interjected by Koplin. The defense of the five-year statute of limitation (KRS 413.120) as to the additional claims asserted in the amended or supplemental complaint is not good, because the basis of this litigation is a written contract—the assignment of the 15% interest in the oil leases from Koplin to the Kelricks, and for Koplin's failure to live up to the terms thereof, to which the fifteen-year statute of limitations (KRS 413.090(2)) applies. Actually, Koplin did not brief the limitations issue, so we assume it was abandoned. The defense of novation—the direct payment of 15% of the value of the oil by Ashland during the third period instead of 24% as required by the contract assigning the Kelricks their 15% interest in the leases, is not tenable, for that agreement obviously was for the purpose of obtaining regular payments to the Kelricks when they could not get them directly from Koplin, and just as obviously Ashland had no way of knowing Koplin's production costs, so it was necessary for Ash-

land to withhold some percentage to cover Koplin's pending costs. In any event our prior opinion decided that Koplin waived any pending claims for production costs in order to effect the sale to Climax. Furthermore, Koplin's oral agreement to waive production costs is not an agreement in itself which comes within the Statute of Frauds. Again, our prior opinion determines this issue.

The judgment is affirmed on appeal and reversed on cross appeal and the case remanded for entry of judgment in conformity to this opinion.

All concur.